# UNITED STATES DISTRICT COURT
# DISTRICT COURT OF MASSACHUSETTS

**Attachment 1**

| | | |
|---|---|---|
| **Chidiebere Nwaubani, Pro Se** | ) | |
| **(Plaintiff)** | ) | |
| | ) | **CIVIL ACTION** |
| **V.** | ) | **No._____** |
| | ) | |
| **Citibank, N.A., San Antonio, Texas 78245** | ) | |
| **Equifax Information Services, LLC** | ) | |
| **Experian Information Solutions, Inc.** | ) | |
| **(Defendants)** | ) | |

------------------------------------------------------------

# COMPLAINT

Plaintiff, Chidiebere Nwaubani, for his complaint states as follow:

## I. PRELIMINARY STATEMENT

This action is brought by the Plaintiff against the Defendants for multiple willful or knowing non-compliance of the Fair Credit Reporting Act (FCRA), 15. U.S. C. §1681 et seq., particularly in 2009-2010; the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §1692 et seq., particularly in 2009-2010; the Massachusetts Consumer Protection Act, Massachusetts General Laws Chapter 93A (M.G.L. c. 93A) in 2006-2010; and Massachusetts Law of Defamation (M.G.L. c. 231) in 2007-2010.

## II. JURISDICTION & VENUE

This Court has jurisdiction over this matter under 28 U.S. C. § 1331 and 28 U.S. C. § 1332. Venue is proper in the United States District Court, District of Massachusetts.

## III. PARTIES

(a) Plaintiff Chidiebere Nwaubani is a resident of Westport, Bristol County, Massachusetts and is a "consumer" as that term is defined in FCRA §1681a(c) and FDCPA §1692a(3) and used in M.G.L. c. 93A.

(b) Defendant Citibank, N.A., San Antonio, Texas 78245 (hereinafter, "Citibank") is a "financial institution" as that term is defined in FCRA §1681a(t) and a "debt collector" as that term is defined in FDCPA §1692a(6). In these capacities, Citibank furnishes credit account information to consumer reporting agencies and is therefore subject to FCRA §1681s-2(b)(1)(A) and M.G.L. c. 93A, § 54A(a) each of which imposes specific duties and prohibitions upon any person or entity that furnishes information to a consumer reporting agency.

(c) Defendant Citibank has its mailing address thus: Citibank, N.A., P.O. Box 769006, San Antonio, Texas 78245 (Telephone: 800-685-0935; 210-677-7352).

(d) Upon information and belief, Defendant Citibank has its offices at 100 Citibank Drive, San Antonio, Texas 78245. At all times relevant to this complaint, Citibank has transacted business in the geographical area covered by the U.S. District Court of Massachusetts.

(e) Defendant Equifax Information Services, LLC. (hereinafter, "Equifax") is a "consumer reporting agency" as that term is defined in FCRA §1681a(f). Upon information and belief, Equifax has its offices in Atlanta, Georgia and has its mailing address thus: Equifax Information Services LLC, P.O. Box 105314, Atlanta, GA 30348. At all times relevant to this complaint, Equifax has transacted business in the geographical area covered by the U.S. District Court of Massachusetts.

(f) Defendant Experian Information Solutions, Incorporated (hereinafter, "Experian") is a "consumer reporting agency" as that term is defined in FCRA §1681a(f). Experian has its mailing address thus: Experian, 701 Experian Parkway, Allen, TX 75013. Upon information and belief, Experian has its offices at 701 Experian Parkway, Allen, Texas. At all times relevant to this complaint, Experian has transacted business in the geographical area covered by the U.S. District Court of Massachusetts.

## IV. STATEMENT OF FACTS

### Introduction

(**1**) At issue is the long-running highly inaccurate reporting of Plaintiff's _former_ Citibank Home Equity Line of Credit (HELOC) by Citibank, Equifax, and Experian.

(**2**) Since fall 2006, the information in Plaintiff's Equifax and Experian credit reports regarding the HELOC has undergone several evolutionary phases of inaccuracy. However, since January 2007, the credit reporting agencies have diverged sharply regarding the content of their inaccurate information on the item. Plaintiff has consistently drawn the attention of Equifax and Experian to the fact that Citibank furnishes two conflicting sets of information on one and the same item to both agencies.

(**3**) These statements will show that:

(**a**) Citibank has had many opportunities to up-date its records to accurately reflect the status of the HELOC. Instead, Citibank has repeatedly and maliciously misrepresented Plaintiff's credit information, even furnishing and allegedly verifying evidently conflicting, false, and highly derogatory information to Equifax and Experian regarding the above-mentioned item. And both Equifax and Experian have repeatedly parroted Citibank's evidently conflicting, false, and highly derogatory information.

(**b**) In addition, Citibank has repeatedly "verified" and "re-verified" false and highly derogatory collections and charge-offs in its relentless effort to collect a non-existent debt from Plaintiff.

(**c**) Defendants have therefore repeatedly violated, and continue to violate, the Federal Fair Credit Reporting Act, the Federal Fair Debt Collection Practices Act, the Massachusetts Consumer Protection Act, and Massachusetts Law of Defamation.

(**d**) Since Defendants are well versed in these laws and their practical implications, their violations were done with actual knowledge and therefore intentionally and/or with reckless disregard as to whether their actions and inactions violated any laws.

(**e**) Since Defendants are well versed in these laws and their practical implications, they knew that their knowing, intentional and reckless non-compliance with the laws violated Plaintiff's rights.

(**f**) All actions taken by Defendants were done with either the desire to harm Plaintiff and/or with the knowledge that their actions would very likely harm Plaintiff.

## Sequence of Events

(**4**) In July 2003, Plaintiff bought a residential house in Colorado, his tax home at the time.

(**5**) Mortgage loan for the property included a Home Equity Line of Credit (HELOC), provided by Citibank in the amount of $28,700.00.

(**6**) In November 2004, Plaintiff refinanced the HELOC, increased the credit line to $50,000.00 part of which paid off the initial HELOC of $28,700.00.

(**7**) In May 2005, Plaintiff accepted a job in Massachusetts. Consequently, Plaintiff relocated from Colorado to Massachusetts in August 2005.

(**8**) Because of the new job, Plaintiff's Colorado house was put on the market on June 10, 2005.

(**9**) The real estate market in the Greater Denver area became very depressed in late spring 2005 and remained so for over a year. As a consequence, Colorado had the worst foreclosure record in the country in spring-summer 2006.[1] Because of the depressed

---

[1] This was well reflected in the local media. For example, see "Foreclosures push inventory close to a record," Denver Post, April 7, 2006; "Unsold homes on increase," Denver Post, April 6,

market, Plaintiff had to drop his asking price several times. Nonetheless, the <u>first</u> offer on the property came in April 2006 and it was well below the asking price at the time.

(**10**) A second and worse offer was received in early May: this offer induced Citibank to approve a short sale of the property; this occurred on June 26, 2006.[2]

(**11**) Proceeds from the sale were not enough to pay off the HELOC. Consequently, on June 20, 2006 (that was, six days before the sale), Citibank packaged a fresh, unsecured loan for Plaintiff in the amount of $12,112.40—consisting, according to Citibank's calculation, of (a) the balance/deficiency on the HELOC and (b) the interest on the unsecured loan.

(**12**) Citibank set the terms of the unsecured loan as follows: 3 percent fixed interest rate; monthly payment of $83.65; payment due on the first of each month beginning on August 1, 2006; and final payment due on July 1, 2021.

(**13**) The loan documentation was explicit that: "There is a Side Note for the remaining balance of $12,112.40." The Monthly Payment Agreement for the unsecured loan, prepared by Citibank, was similarly explicit that: "This amount [$12,112.40] represents payment toward the shortfall due on the mortgage payoff balance for [Citibank HELOC] account number 2709468223." In effect, the unsecured loan was solely for the purpose of paying off the balance/deficiency on the HELCO account. *This in effect means that, according to Citibank itself, this loan was used to pay off the balance on the HELOC.*[3]

(**14**) With the June 20 and 26, 2006 transactions (that is, the unsecured loan $12,112.40 and the short sale), Plaintiff fulfilled his contractual obligations to Citibank concerning the HELOC. And since June 2006, there has been no other activity, including monthly billing statements, on the HELOC account.

(**15a**) In 2006, a typical short sale of a residential property involved three conditions: (a) the seller had to be behind on payments for several months; (b) the seller owed more on the property than the prevailing price; and (c) the lender was willing to waive the deficiency.[4] The lender, having waived the deficiency, had to report the cancelled deficiency to the IRS and the state tax agency; which meant that the creditor/borrower had to report the cancelled deficiency as taxable income. Conditions (a) and (c) did not apply to Plaintiff's short sale; only condition (b) did.

---

2006; "Foreclosures piling up: Colorado rate nation's highest during March," <u>Denver Post</u>, April 20, 2006; "Home seizure's ripple effect," <u>Denver Post</u>, April 21, 2006.

[2] The June 2006 transactions were handled for and on behalf of Defendant Citibank by its Loss Mitigation Department located at O'Fallon Missouri.

[3] Plaintiff enclosed copies of the loan documents in his letters dated February 27, 2008 to both Equifax and Experian; the letters also explained the implications of the unsecured loan to both agencies.

[4] "Deficiency" is the difference between the net sales proceeds and the outstanding balance of the loan. "Waiving the deficiency" in this context means the lender taking less than the full balance owed on the account, permitting sale of the property, and releasing the lien.

(**15b**) With regard to the first condition: from Massachusetts, Plaintiff continued to pay as and when due all the bills on the Colorado house: the mortgage, insurance, taxes, water and electricity bills, home association fees, trash collection (even when no trash was generated and collected from the house), maintenance of the property, including snow clearance and mowing the lawns. *Consequently, there was no delinquency (in terms of late/missed payments) on the HELOC—and none was recorded on June 26, 2006.*

(**15c**) With regard to the third condition: the short sale of Plaintiff's Colorado house was atypical. The unsecured loan (of $12,112.40) meant that Citibank still held Plaintiff personally and directly responsible for the deficiency—and did not therefore forgive or write off a penny of the balance/deficiency on the HELOC account. Consequently, Citibank did not and could not file IRS 1099-C (Cancellation of Debt Income Form) as required by federal law whenever a financial entity forgives, charge-offs, cancels or settles a loan balance (including mortgages) greater than $600.[5]

(**16**) And because there was no balance on the HELOC account (after June 26, 2006), Citibank, as both a creditor and a debt collector, has not sent and cannot send to Plaintiff any correspondence (notice of default/delinquency and/or notice of collection) regarding any debt on that account as required under FDCPA §1692(g)(1)-(3).

(**17**) There is no delinquency (in terms of late/missed payments) on the unsecured loan of $12,112.40.

(**18**) In spite of the preceding statements, Trans Union credit report # 160633145 of August 10, 2006 showed delinquency on the HELOC account and therefore flagged the item as an "adverse account."

(**19**) In spite of the preceding statements, Equifax credit report # 6223046753 of August 11, 2006 showed delinquency on the HELOC account.

(**20**) Because of statements 18-19 above, Plaintiff promptly sought Citibank's intervention. Citibank's response was a letter dated August 28, 2006, signed by Ms. Kathy Duncan, and addressed separately to Equifax, Experian, and Trans Union: each of the letters was copied to Plaintiff. The letter explicitly advised each of the credit reporting agencies:

> *If a late payment status has been reported on the above referenced Citibank/Citicorp account, please remove this information from your records. The*

---

[5] In 2006, before the Mortgage Debt Relief Act of 2007, any financial institution that forgave or charged off (that is, determines that the debt will not be paid) $600 or more of a debt's principal (the amount not attributable to interest and fees) must send to the IRS and the debtor a Form 1099-C at the end of the tax year. This was also the case if one settled a debt with a creditor for less than full amount that was $600 or more. In all these cases, the IRS treated forgiven or written off debt as income, on which one may owe taxes reported on line 21 of Form 1040. See IRS Publication 4681 (on Cancelled Debts, Foreclosures, Repossessions and Abandonments); and IRS, "The Mortgage Forgiveness Debt Relief Act and Debt Cancellation," http://www.irs.gov/individuals/article/0,,id=179414,00.html

*entry of this account should reflect a current payment status since April 2006
through August 2006.*

(**21**) Plaintiff followed up with a letter dated October 7, 2006 to Trans Union and
Equifax, advising both agencies to comply with Citibank's August 28, 2006 letter and
remove the delinquency on his HELOC account.

(**22**) Trans Union credit report # 163474356 of November 10, 2006 showed that the
HELOC account had been deleted—because in line with FCRA §1681i(a)(5)(A), the
information Citibank furnished on the item was "inaccurate or incomplete or cannot be
verified."

(**23**) On the other hand, Equifax credit report # 6296029180 of November 13, 2006
showed that based on "Items As of Date Reported 11/2006": the balance on the HELOC
account was $10,601.00; the date of last payment was 08/2006; scheduled payment
amount was $345; and date of last activity was 04/2006.

(**24**) In Plaintiff's letter to Equifax dated of December 9, 2006, Plaintiff pointed out that:
*"Each of these entries* [in the above Equifax credit report] *was false, misleading and
utter nonsense.*" Plaintiff pointed out that because the HELOC was paid off and closed in
June 2006, he could not have made any payment on the account in 08/2006.
Consequently, Plaintiff advised Equifax to ask Citibank to "show proof that I made
payment on this account in 08/2006. In any case, if [he] made a payment in 08/2006, why
did Equifax also have the "date of last activity" as 04/2006?" Plaintiff's letter concluded
by advising Equifax to "specifically state that this account has been "Paid off, Closed and
has zero balance."

(**25**) In response to Plaintiff's December 2006 letter, Equifax issued credit report #
6350016278 of January 10, 2007. This was an improvement on the August-November
credit reports. First, under "Activity Description," Equifax now reported the HELOC
account as "Paid." Second, the report showed that the balance on the item was $0. But
Equifax still reported 08/2006 as "Date of Last Payment" and 04/2006 as "Date of Last
Activity." Plaintiff's next letter dated March 3, 2007 drew Equifax's attention to these
conflicting dates. Besides, Plaintiff urged Equifax to report the item as "Paid and Closed"
under "Activity Description."

(**26**) In response to Plaintiff's March 2007 letter, Equifax sent him credit report #
7068043282 of March 27, 2007. Next was Equifax credit report # 7362003830 of
December 28, 2007 to which Plaintiff responded by sending a letter dated February 27,
2008. Equifax's response to Plaintiff's February 2008 letter was to send Plaintiff another
credit report dated April 30, 2008.

(**27**) Each of the Equifax credit reports cited above was either worse than the preceding
one or simply repeated precisely the same information Plaintiff had complained about in
the preceding letter. The first page of each Equifax credit report included a section titled,
"Results of Your Investigation" with the comment:

> *We have researched the credit account....The results are: The status of this*
> *account has been updated. The prior paying history on this account has been*
> *updated. Additional information has been provided from the original source*
> *regarding this item.*

(**28**) All through fall 2006, Experian refused to send Plaintiff his credit report, always claiming that the personal information Plaintiff gave them did not match their records.

(**29**) Experian credit report # 2027920226 of January 21, 2007 reported the Citibank HELOC account thus: "*Recent balance* $10,601 as of Aug 2006; *Status*: Open/Never Late." *It is worthy of note that Equifax credit report # 6350016278 of January 10, 2007 reported the HELOC account as "Paid" and showed the balance on the item as $0.*

(**30**) In Plaintiff's letter of March 3, 2007 to Experian, he emphasized that the account had been paid off and closed before August 2006—and should therefore not show any balance whatsoever. Plaintiff further explained that the Experian credit report mixed two separate accounts: (a) a HELOC opened in November 2004 and paid off in June 2006 and an unsecured loan opened in June 2006 and on which he was (and he is) still making the required payments. In spite of this explanation, Experian credit report # 2027920226 of April 16, 2007 retained the information contained in the January 2007 credit report.

(**31**) In spring 2007, Plaintiff—unaware that Experian was at the time, and for the first time, falsely reporting that the Citibank HELOC account was in collection—sought an auto loan, first through the AAA office in Fairhaven, MA: all the financial institutions contacted by AAA declined Plaintiff's application. Of all the financial institutions Plaintiff contacted on his own, only Workers' Credit Union, Fitchburg, MA, [6] which had financed Plaintiff's previous auto loan approved his application, but with 14.99 interest rate. Plaintiff secured an auto loan with First American Way (through Dartmouth Nissan, North Dartmouth, MA) at 18 percent interest rate and a credit line with 22 percent interest rate from CitiFinancial, Fairhaven. In each of these cases, the commercial enterprise concerned relied on Plaintiff's Experian credit report. *Plaintiff communicated all this information to Experian in a letter dated June 12, 2007.* It is instructive that Plaintiff finally got and used an auto loan with a 6.75% interest rate from St. Anne's Credit Union, North Dartmouth—because the credit union uses Trans Union which deleted the HELOC account from Plaintiff's credit file in fall 2006.

(**32**) Subsequent Experian credit reports—# 3518767565 of June 28, 2007 (which caused Plaintiff's letter of July 14, 2007); # 1104898077 of July 22, 2007; and # 1388182690 of January 7, 2008—faithfully repeated the same information regarding the HELOC account Plaintiff had complained against in his letters of March 3, 2007; June 12, 2007; and July 14, 2007 respectively.

(**33**) Plaintiff sent yet another letter, dated February 27, 2008, to Experian: this was in response to Experian credit report # 1388182690 of January 7, 2008. Again, Plaintiff's February 2008 letter went over the history of the HELOC account and reiterated the same

---

[6] For this, Plaintiff had to drive to Fitchburg which is 92.53 miles away from him.

points Plaintiff had made to Experian in previous letters. As in the March 7 letter, Plaintiff again emphasized that: "I currently have an unsecured Citibank loan of $12,112.40 and that this is my only indebtedness to Citibank"—and that the January 2008 credit report muddled up "two separate accounts: a HELOC opened in November 2004 and paid off in June 2006 and an unsecured loan opened in June 2006 and on which I am still making payments." Along with the letter, Plaintiff sent Experian the documents related to the unsecured $12,112.40 loan.

(**34**) Experian's response to Plaintiff's February 27, 2008 letter was to send him credit report # 0859173385 of March 29, 2008. As usual, this credit report still retained precisely the same information regarding the HELOC account which Plaintiff had complained about in the February letter.

(**35**) Each Experian credit report cited above included a section titled, "*Items we Investigated*" with the comment: "*We completed investigating the items you disputed with the sources of the information. Here are the results:*
    *Credit Items—CBNA 27094  Outcome—Updated*

(**36**) FCRA §1681i (b) provides that: "If the reinvestigation does not resolve the dispute, the consumer may file a brief statement setting forth the nature of the dispute. The consumer reporting agency may limit such statements to not more than one hundred words if it provides the consumer with assistance in writing a clear summary of the dispute." Plaintiff in his letter of July 14, 2007—responding to Experian credit report # 3518767565 of June 28, 2007—sent Experian the 88-word statement below and advised that it be included with the Citibank HELOC account as provided by law.

> There is *no balance and no payment due on this account because the account was paid off and closed in June 2006.* This was a home equity line of credit (HELOC) secured with a house in Colorado. The house sold at a loss on 06/26/2006: Citibank received $38,654.62 from the sale and issued me a side note in the amount of $12,112.40, as an unsecured loan, with which I paid off the HELOC. Trans Union has deleted this account from my report. Equifax reports zero balance on this account.

Plaintiff's statement of dispute appeared in Experian credit report # 1104898077 of July 22, 2007; but Equifax disallowed the last sentence in the statement.

## The 2009-2010 Credit Reports

(**37**) Plaintiff has a Citi Simplicity credit card. At 9:43am EST, Monday, May 11, 2009, an official of the card's customer service called to inform Plaintiff that they had decided to cut the credit limit on the card because of "a long standing charge off of $8,000." On Plaintiff's prompting, the official explained (a) that their decision was based on the status of Plaintiff's former Citibank HELOC, and (b) that a "charge off" amount is a bad debt—that is, a debt that has remained unpaid for so long that the creditor has concluded that the debt will never be paid. A few days later, Plaintiff received a letter dated May 12, 2009 from Citi confirming the decrease of the credit line because his credit report "indicates a

delinquent credit obligation, either paid or unpaid, with another creditor." The letter
explained that this decision was based on information obtained from Equifax.

(**38**) By a letter dated May 7, 2009, another credit card issuer informed Plaintiff that they
had decreased the credit line on the card, in part because of "a history of delinquency
with [his] creditors." The issuer stated that their decision was informed by information
they obtained from Equifax.

(**39**) Following these letters, Plaintiff accessed his Experian credit report online. Experian
credit report # 3990217093 of May 24, 2009 contained the following inaccurate and
highly derogatory information on Plaintiff's former Citibank HELOC account:

| | |
|---|---|
| Status | Paid in Settlement |
| Date Opened | 11/2004 |
| Date of Status | 09/2004 |
| Last Reported Date | 09/2008 |
| Type | Revolving |
| Monthly Payment | $0 |
| Credit Limit | N/A |
| High Balance | $50,000 |
| Recent Payment | N/A |

Creditor's Statement: Account legally paid in full for less than full balance.

(**40**) Consumer reporting agencies are required by FCRA §611(g) to "clearly and
accurately" disclose to the consumer all the information in his file. Not only was the
Experian information on the HELOC inaccurate, it was not even "clear." In particular, the
Experian credit report did not include an explanation of "Paid in Settlement" and
"Account legally paid in full for less than full balance."

(**41**) The phrases—"Paid in Settlement" and "Account legally paid in full for less than
full balance"—did not appear in any of the documents related to Plaintiff's June 2006
transactions with Citibank. Experian credit report # 3990217093 of May 24, 2009 was the
**first time ever** Plaintiff saw "*Status: Paid in Settlement*" and "*Creditor's Statement:
Account legally paid in full for less than full balance*" in any of his credit reports,
including those generated by Experian. This means that the phrases—"Paid in
Settlement" and "Account legally paid in full for less than full balance"—first appeared
in Plaintiff's Experian credit report, *and only in his Experian credit report*, **three full
years after those transactions**.

(**42**) Experian credit report # 3990217093 of May 24, 2009 enabled Experian to
negatively re-age Plaintiff's former Citibank HELOC account. Experian credit report
#0859173385 of March 28, 2008 had "Date of status" for the account as "Jul 2006" with
the comment: "This account is scheduled to continue on record until Feb 2013." On the
other hand, Experian credit report of May 24, 2009 had the "Date of status" as 09/2008
and the comment: "This account is scheduled to continue on record until Jun 2015."

(**43**) As statement 14 above shows, the June 2006 transactions concluded all activities, including monthly billing statements and payments, on Plaintiff's former HELOC. And as clearly demonstrated in statements 11, 13, and 15c above, Citibank did not forgive or write off a penny of the balance/deficiency on the HELOC account. In the circumstance, even if Experian's characterization of this item was accurate, *but it was not*, Experian was still in willful violation of FCRA §1681c(a)(4) which prohibits consumer reporting agencies from reporting charge-offs that are more than 7 years old.

(**44**) Plaintiff accessed Experian credit report # 3990217093 of May 24, 2009 online at about 11:21 pm on 05/24/2009. After studying the report, Plaintiff did the Experian online dispute of the information regarding the HELOC account that night.

(**45**) Experian sent Plaintiff another credit report (# 3990217093) dated May 25, 2009 by regular mail: this report contained exactly the same information Plaintiff had disputed. It also included a section (on p. 1) titled, *"Items we Investigated"* with the comment: *"We completed investigating the items you disputed with the sources of the information. Here are the results: Credit Items—CBNA 27094  Outcome—Updated."*

(**46**) Since Plaintiff disputed the item at about 11:30 pm—at the earliest—on May 24, 2009, it is safe to conclude that it took Experian less than 18 hours to complete their investigations and generate the next credit report. This was certainly insufficient time for the two-track reinvestigation procedures Congress envisaged in FCRA §1681i (for Experian) and in FCRA §1681s-2(b)(1-2) for Citibank.

(**47**) FCRA §1681i (c) requires that: "Whenever a statement of dispute is filed, unless there is reasonable grounds to believe that it is frivolous or irrelevant, the consumer reporting agency shall, in any subsequent report containing the information in question, clearly note that it is disputed by the consumer...." Plaintiff had disputed Experian credit report # 3990217093 of May 24, 2009; Experian did not "note" this dispute in credit report # 3990217093 dated May 25, 2009.

(**48**) Plaintiff's Equifax credit report # 9148034508 of May 28, 2009—which came by regular/postal mail—had the following equally inaccurate and highly derogatory information on the Citibank HELOC account:

| | |
|---|---|
| Date Opened | 11/2004 |
| Credit Limit | $50,000 |
| Items As of Date Reported | 04/2009 |
| Balance Amount | $7,938 |
| Date of Last Payment | 04/2009 |
| Actual Payment Amount | $83.00 |
| Scheduled Paymnt Amount | $345.00 |
| Date of 1st Delinquency | 05/2006 |
| Date Maj. Del. 1st Rptd | 10/2008 |
| Charge Off Amount | $10,684 |
| Current Status | Charge Off |
| Additional Information | Charged Off Account |

Account History with Status Codes
    03/2009—L; 02/2009—L; 01/2009—L; 12/2008—L; 11/2008—L; 10/2008—L.

(**49**) Consumer reporting agencies are required by FCRA §1681g(a)(1) to "clearly and accurately" disclose to the consumer all the information in his file.[7] The information in Equifax credit report # 9148034508 of May 28, 2009 regarding the HELOC was inaccurate in several respects. Most notable inaccuracies are: (a) balance amount, (b) charge amount of $10,684, (c) current status: charge off, and (d) the "Account History with Status Codes," which conveyed the false and damaging information that the account was in collection from October 2008 to March 2009.

(**50**) The "Actual Paymnt Amount" of $83.00 and the "Scheduled Paymnt Amount" of $345.00 were obviously intended to notify the credit world, albeit falsely and maliciously, that even after Plaintiff "resumed" payments in April 2009—after months of "delinquency"—he was still unable to pay up to one-quarter of the required monthly payment.

(**51**) This item was never charged-off: a creditor "charges off" a debt when it treats the debt as a loss or expense because payment is unlikely.[8] And Citibank, in willful violation of FCRA §1681s-2(a)(7), has not notified Plaintiff that it furnished this negative information to Equifax.

(**52**) It is striking that Equifax was, in May 2009, reporting *"Date of 1st Delinquency"* of 05/2006 in spite of Citibank's letter dated August 28, 2006, which clearly advised Equifax that: "The entry of this account should reflect a current payment status since April 2006 through August 2006." (Please, see statement 20 above.)

(**53**) Not only was the Equifax information inaccurate, it was not "clear," especially with regard to the following dates and their accompanying activities: (a) Date of Last Payment: 04/2009, (b) Date of 1st Delinquency: 05/2006, (c) "Date Maj. Del. 1st Rptd: 10/2008," without an explanation as to what makes a delinquency a "major" one. Categorizing these dates and activities in this manner is inaccurate and confusing as it does not allow a consumer to determine whether Equifax is properly calculating the obsolescence date for a particular adverse item—7 years for most adverse accounts—as required by FCRA §1681c(a)(4).

(**54**) Plaintiff did not dispute Equifax credit report # 9148034508 of May 28, 2009 because he was sick with colitis, a stress-induced ailment, by the time the mail arrived.

(**55**) It is easy to notice that the differences between the Equifax and Experian credit reports of May 2009 were of such magnitude that anyone would readily conclude that the two agencies were reporting two items—rather than one: Plaintiff's former Citibank

---

[7] The term "file" is limited to the information provided in a consumer report (credit report) as opposed to all the data a consumer reporting agency may be retaining on a consumer. See *Gillespie v. Trans Union Corp.*, 482 F. 3d 907 (7th Cir. 2007).
[8] See Black's Law Dictionary, 227 (7th edition, 1999).

HELOC account. For the avoidance of any doubt, the information on the item was furnished to and allegedly verified for both agencies by one and only one source: Citibank, N.A., P.O. Box 769006, San Antonio, Texas,78245 (800-685-0935; 210-677-7352).

(**56**) This summer, Plaintiff obtained his Experian credit report again. With regard to Plaintiff's former Citibank HELOC account, Experian credit report # 4291-9007-57 of June 30, 2010 shared precisely the same inaccurate and highly derogatory information as Experian credit report # 3990217093 of May 24, 2009. The former report included the explanation: "This item was verified and updated on May 2009."

(**57**) Plaintiff noticed that Experian credit report # 4291-9007-57 of June 30, 2010 did not "note" his May 2009 dispute of the item.

(**58**) Plaintiff sent Experian a letter dated August 5, 2010 and titled "Re: Experian Report # 4291-9007-57 of June 30, 2010—Dispute of Citibank Account Number 270946." Experian, in turn, sent Plaintiff credit report # 4027-0198-33 dated August 13, 2010, in which Experian insisted that they "have already investigated this information and the credit grantor has verified its accuracy....Pursuant to Section 611(a)(3)(A) of the Fair Credit Reporting Act, we will not be investigating your dispute again at this time." (FCRA §611(a)(3)(A) deals with "frivolous or irrelevant" disputes.)

(**59**) Pursuant to FCRA §1681i (a)(4), Experian cannot rely exclusively on the perfunctory computerized response of its furnisher because Congress requires it to also "review and consider" Plaintiff's information. Experian knowingly and recklessly disregarded its obligations in this regard by merely parroting Citibank's false and conclusory assertions while dismissing Plaintiff's dispute as "frivolous or irrelevant."

(**60**) Experian sent Plaintiff another credit report—Experian Report # 4027-0198-33 of August 17, 2010—which, again, did not "note" his dispute of the item. For the records, this was the third time Experian sent Plaintiff his credit report without noting his May 2009 dispute of the item.

(**61**) This summer, Plaintiff obtained his Equifax credit report again. Equifax Report Confirmation # 0182014961; Credit File: July 1, 2010 differed from Equifax credit report # 9148034508 of May 28, 2009 only in the sense that the former had more "collection codes" as shown below:

| | |
|---|---|
| Date opened | 11/2004 |
| Credit Limit | $50,000 |
| Balance Amount | $6,851 |
| Date of Last Paymnt | 05/2010 |
| Actual Paymnt Amount | $83.00 |
| Scheduled Paymnt Amount | $345.00 |
| Date of 1st Delinquency | 05/2006 |
| Date Maj. Del. 1st Rptd | 10/2008 |
| Date of Last Activity | |

Charge Off Amount      $10,684
Additional Information      Charged Off Account

<u>Account History with Status Codes</u>:

04/2010, L; 03/2010, L; 02/2010, L; 01/2010, L; 12/2009, L; 11/2009, L; 10/2009, L;
09/2009, L; 08/2009, L; 07/2009, L; 06/2009, L; 05/2009, L; 04/2009, L; 03/2009, L;
02/2009, L; 01/2009, L; 12/2008, L; 11/2008, L; 10/2008, L.

(**62**) As with the May 2009 credit reports, the information on the HELOC in (a) Experian
Report # 4291-9007-57 of June 30, 2010 and (b) Equifax Report Confirmation #
0182014961; Credit File: July 1, 2010 were as different as day and night.

(**63**) Plaintiff sent Equifax a letter dated August 5, 2010 and titled "Re: Equifax Report
Confirmation # 0182014961; Credit File: July 1, 2010—Dispute of Citibank Account
Number 6100816-270946." The letter began with the observation that:

> *The above information contains only two correct items*—"Date opened:
> 11/2004" and "Credit Limit: $50,000" regarding Citibank Account # 6100816-
> 270946. *The following information are bogus and unwarranted*: (a) Balance
> Amount: $6,851, (b) Date of Last Payment: 05/2010, (c) Actual Payment
> Amount: $83.00, (d) Scheduled Payment Amount: $345.00, (e) Date of 1st
> Delinquency: 05/2006,[9] (f) Date of Major Delinquency: 10/2008, (g) Date of Last
> Activity, (h) Charge Off Amount: $10,684, and (i) Account History with Status
> Codes and all accompanying dates and Ls.

(**64**) In response to Plaintiff's dispute letter, Equifax sent credit report Confirmation #
0223029747; Credit File: September 13, 2010, which—as shown below—differed
substantially and quite dramatically from the July 2010 credit report:

Date opened      11/2004
Credit Limit      $0
Activity Description      Paid and Closed
Balance Amount      $0
Date of Last Paymnt      08/2010
Actual Paymnt Amount      $83.00
Scheduled Payment Amount      $0
Date of 1st Delinquency      05/2006
Date of Last Activity
Date Maj. Del. 1st Rptd      10/2008
Current Status      Charge Off
Additional Information      Closed or Paid/Zero Balance; Account Paid For
                                        Less Than Full Balance; Charge Off Account

<u>Account History with Status Codes</u>:

08/2010, L; 07/2010, L; 06/2010, L; 05/2010, L; 04/2010, L; 03/2010, L; 02/2010, L;
01/2010, L; 12/2009, L; 11/2009, L; 10/2009, L; 09/2009, L; 08/2009, L; 07/2009, L;
06/2009, L; 05/2009, L; 04/2009, L; 03/2009, L; 02/2009, L; 01/2009, L; 12/2008, L;
11/2008, L; 10/2008, L; 09/2008, L; 08/2008, L; 07/2008, L; 06/2008, L; 05/2008, L;

---

[9] In this particular instance, see the Citibank letter of 08/28/2006 to Experian, Equifax, and Trans
Union."

04/2008, L; 03/2008, L; 02/2008, L; 01/2008, L; 12/2007, L; 11/2007, L; 10/2007, L;
09/2007, L; 08/2007, L; 07/2007, L; 06/2007, L; 05/2007, L; 04/2007, L; 03/2007, L;
02/2007, L; 01/2007, L; 12/2006, L; 11/2006, L; 10/2006, L; 09/2006, L; 08/2006, L;
07/2006, L; 06/2006, 2; 05/2006, 1

(**65**) Equifax credit report of September 13, 2010 moved the "Date of Last Paymnt" on
the HELOC account from May 2010 to August 2010 which is inaccurate since no
payment has been made on the account since June 2006, when its collateral (the Colorado
property) was sold. The "Account History with Status Codes" runs from May 2006 to
August 2010 in place of the previous October 2008 to April 2010. Again, this change
raises more questions than answers—the most obvious being: (a) When exactly did this
item go into collection? (b) What is the name of the collection agency which Citibank is
using for this purpose? (c) Did Equifax raise these questions with Citibank?

(**66**) Charged-off accounts enable financial entities to lower their tax burdens. In this
regard, knowingly and intentionally categorizing this item as a "charged off account"
which it is not, has serious implications.

(**67**) Equifax credit report of September 13, 2010 differs substantially from that of July 1.
In the former, the credit limit has zero dollars; so too the "balance amount." The
September report has two new categories: (a) "Activity Description: Paid and Closed";
and (b) "Additional Information: Closed or Paid/Zero Balance; Account Paid For Less
Than Full Balance; Charge Off Account."

(**68**) FCRA §1681s-2(a)(7)—which has as its title: "Notice to Consumer Required"—
requires that once Citibank "furnishes negative information...regarding credit extended to
a consumer," Citibank "shall provide a notice of such furnishing of negative information,
in writing, to the consumer." Citibank has knowingly and recklessly disregarded this
express procedural requirement mandated by Congress.

(**69**) The first page of Equifax credit report Confirmation # 0223029747; Credit File:
September 13, 2010 included a section titled, "Results of Your Investigation" with the
comment:
> *We have researched the credit account....The results are: The date closed has
> been updated. The last payment date has been added/updated. This
> creditor/agency has verified to Equifax that the date of last activity is being
> reported correctly. Additional information has been provided from the original
> source regarding this item.*

The above claims are clearly inaccurate: Equifax's information on the HELOC is blank
with regard to: (a) date closed and (b) date of last activity. The "date of last payment" is
certainly inaccurate.

(**70**) Equifax does not provide customers with the obsolescence date for adverse items in
their credit reports. Instead, it uses a dynamic method which allows it to use the last date
payment date as the delinquent date in the Date of Last Activity field. It is therefore
noteworthy that while Equifax falsely shows the "Date of Last Paymnt" as 08/2010; the

"date of last activity" line is willfully left blank. With these two lines, it is quite conceivable that Equifax will be reporting this item negatively well into spring 2018 at the earliest.

(**71**) As explained in statement 14 above, the June 2006 transactions concluded all activities, including monthly billing statements and payments, on Plaintiff's former HELOC. And as clearly demonstrated in statements 11, 13, and 15c above, Citibank did not forgive a penny of the balance/deficiency on the HELOC account; this is not a charge-off account, and it is not and has never been in collection. Besides, Citibank has not and has no basis whatsoever to send a delinquency, default or collection notice or even a billing statement to Plaintiff. In the circumstance, even if Equifax's information accurate, *but it is not*, Equifax is still in willful violation of FCRA 1681c(a)(4) which prohibits consumer reporting agencies from reporting a charge-off that is more than 7 years old.

(**72**) Although Equifax allegedly "researched the credit account," the results of the "research" reflect only the creditor's conclusory assertions. Even at that, the agency was particularly selective. For one thing, Equifax was still reporting "*Date of 1st Delinquency*" of 05/2006 in spite of Citibank's letter dated August 28, 2006, which clearly advised Equifax that: "The entry of this account should reflect a current payment status since April 2006 through August 2006." (Please, see statement 20 above.)

(**73**) Pursuant to FCRA §1681i (a)(4), Equifax cannot rely exclusively on the perfunctory computerized response of its furnisher because Congress requires it to also "review and consider" Plaintiff's information. Equifax recklessly disregarded its obligations in this regard by merely parroting Citibank's false and conclusory assertions.

(**74**) Equifax credit reports of July 1, 2010 and September 13, 2010 point to another frustrating aspect of Plaintiff's ordeal: the more he disputed the misrepresentation of the HELOC account by Defendants, the worse the scope and degree of the inaccuracy of their information became.

(**75a**) The Defendants are well-informed that "Charge Off"; [10] "Paid in Settlement";[11] and "Account legally paid in full for less than full balance" are ***the worst possible phrases*** in the credit industry and thus make obtaining any credit almost impossible. Given this grave consequence and Plaintiff's many disputes—and given that each dispute provided Equifax and Experian with evidence sufficient to place them on notice that their source is not reliable—one would have expected Defendants to follow "reasonable procedures" to ensure "maximum possible accuracy" of Plaintiff's credit reports.

(**75b**) If Equifax and Experian had, at any point since 2006, done a reasonable investigation; if they had, for once, done a little more than accepting Citibank's information as the truth and confronted Citibank with Plaintiff's information; if they had asked Citibank for documentary proof of its allegations (say, that the account was in collection or was "paid/settled for less than full balance"), both agencies would have quickly reached the same conclusion Trans Union did in fall 2006: that Citibank's information is inaccurate and cannot be verified. Instead, Equifax and Experian continued to carelessly produce, reproduce, report, and circulate information that can so easily be shown to be inaccurate and baseless.

## V. CAUSES OF ACTION: VIOLATIONS OF THE FCRA
(**76**) These causes of action apply only to credit reports for the years 2009 and 2010. And in this regard, Plaintiff restates, reaffirms, and incorporates by reference the foregoing paragraphs.

(**77**) Citibank willfully failed to undertake reasonable investigation of Plaintiff's dispute upon notification by Experian in May 2009 thereby violating an express procedural requirement mandated by FCRA §1681s-2(b)(1)(A-B, D-E).

(**78**) Citibank willfully failed to undertake reasonable investigation of Plaintiff's dispute upon notification by Equifax in August-September 2010 thereby violating an express procedural requirement mandated by FCRA §1681s-2(b)(1)(A-B, D-E).

---

[10] A charge-off is a declaration by a creditor that an amount of debt is unlikely to be collected. This occurs when a consumer becomes severely delinquent on a debt. Traditionally, creditors will make this declaration at the point of six months without payment. *A charge-off is one of the most adverse factors that can be listed on a credit report.* While a charge-off is considered to be "written off as uncollectable" by the bank, the debt is still legally valid, and remains as such after the fact [which means that] the creditor legally has the right to collect the full amount. Source: Wikipedia, "Charge-off," http://en.wikipedia.org/wiki/Charge-off

[11] Debt settlement can also be known by other names such as debt arbitration or debt negotiation. It is a process through which your creditor accepts less than the full amount owed, yet considers the balance as paid. Debts paid off as part of a negotiated settlement will generally show "Paid by Settlement" on a consumer's credit report. If you later apply for new loans, the prospective lender(s) will understand that a debt paid by settlement means that your repayment did not cover the total debt that you had accumulated, but that your creditor accepted a lesser amount. Source: National Foundation for Credit Counseling, "Questions to Ask When Considering Debt Settlement" available online through Google.

(**79**) Equifax willfully violated FCRA §1681e(b) by repeatedly failing to "follow reasonable procedures" that would have assured "maximum possible accuracy" of Plaintiff's credit reports.

(**80**) Equifax willfully violated FCRA §1681i(a)(4) by failing to "review" and "consider" the information provided by Plaintiff during its September 2010 reinvestigation.

(**81**) Equifax willfully violated FCRA §1681c(a)(4) which prohibits consumer reporting agencies from reporting charge-off that are more than 7 years old.

(**82**) Equifax willfully violated FCRA §1681g(a)(1) by failing to "clearly and accurately" disclose to Plaintiff all the information in his file.

(**83**) Equifax willfully violated FCRA §1681e by permitting companies unknown to Plaintiff to obtain his credit report without permissible purpose as outlined in FCRA §1681b.

(**84**) Experian willfully violated FCRA §1681e(b) by repeatedly failing to "follow reasonable procedures" that would have assured maximum possible accuracy of Plaintiff's credit reports.

(**85**) Experian willfully violated FCRA §1681i(a)(4) by failing to "review" and "consider" the information provided by Plaintiff during its May 24- 25, 2009 reinvestigation.

(**86**) Experian willfully failed to reinvestigate Plaintiff's dispute letter dated August 5, 2010 thereby violating an express procedural requirement mandated by FCRA §1681i(a).

(**87**) Experian willfully failed to notify Citibank of Plaintiff's dispute letter dated August 5, 2010 thereby violating an express procedural requirement mandated by FCRA §1681i(a)(2)(A).

(**88**) Experian willfully failed to "note" Plaintiff's dispute of May 24, 2009 in subsequent credit reports thereby violating an express procedural requirement mandated by FCRA §1681i (c).

(**89**) Experian willfully violated FCRA §1681c(a)(4) which prohibits consumer reporting agencies from reporting charge-offs that are more than 7 years old.

(**90**) Experian willfully violated FCRA §1681g(a)(1) by failing to "clearly and accurately" disclose to Plaintiff all the information in his file.

(**91**) Experian willfully violated FCRA §1681e by permitting companies unknown to Plaintiff to obtain his credit report without permissible purpose as outlined in FCRA §1681b.

## VI. CAUSES OF ACTION: VIOLATIONS OF THE FDCPA

(**92**) These causes of action apply to credit reports for 2009-2010. And in this regard, Plaintiff restates, reaffirms, and incorporates by reference the foregoing paragraphs.

(**93**) Citibank willfully violated its FDCPA §1692e(2)(A) obligations by its "false representation or implication" of the "character and legal status" of the HELOC to credit reporting agencies.

(**94**) Citibank willfully violated its FDCPA §1692e(8) obligations by repeatedly communicating to consumer reporting agencies credit information regarding Plaintiff which Citibank knew and should have known was false.

## VII. CAUSES OF ACTION: VIOLATIONS OF M. G. L. c. 93A

(**95**) These causes of action apply only to credit reports issued since mid-September 2006. And in this regard, Plaintiff restates, reaffirms, and incorporates by reference the foregoing paragraphs.

(**96**) Citibank willfully violated its M.G.L. c. 93A § 54A(a) obligations by its failure to up-date the account information of the HELOC account after the June 2006 transactions and ensure a uniform reporting mechanism.

(**97**) Citibank willfully violated its M.G.L. c. 93A § 54A(a) obligations by repeatedly failing to "follow reasonable procedures" that would have assured that credit information regarding Plaintiff which it furnished to consumer reporting agencies was "accurate and complete."

(**98**) Citibank willfully violated its M.G.L. c. 93A § 54A(a) obligations by repeatedly providing, distributing, confirming and verifying to and for consumer reporting agencies credit information regarding Plaintiff which Citibank knows "is not accurate or complete."

(**99**) Citibank willfully engaged in deceptive and unreasonable business conduct by repeatedly "verifying" and "re-verifying" false and highly derogatory collections and charge-offs in its relentless effort to collect a non-existent debt from Plaintiff thereby violating its M.G.L. c. 93A § 2 obligations.

(**100**) Experian willfully engaged in deceptive and unreasonable business conduct by its characterization of Plaintiff's dispute letter dated June 30, 2010 as "frivolous or irrelevant" and in so doing violated its M.G.L. c. 93A § 2 obligations.

## VIII. CAUSES OF ACTION: VIOLATIONS OF M. G. L. c. 231 § 93

(**101**) These causes of action apply only to credit reports issued since mid-September 2007. And in this regard, Plaintiff restates, reaffirms, and incorporates by reference the foregoing paragraphs.

(**102**) Citibank willfully violated M.G.L. c. 231§ 93 by repeatedly furnishing, distributing, and allegedly verifying credit information regarding Plaintiff which Citibank knew to be false, malicious, highly derogatory, and therefore injurious to the credit reputation and good name of Plaintiff.

(**103**) Equifax willfully violated M.G.L. c. 231§ 93 by repeatedly producing, reproducing and circulating credit information regarding Plaintiff which Equifax knew to be false, malicious, highly derogatory, and therefore injurious to the credit reputation and good name of Plaintiff.

## IX. RELIEF

Wherefore, Plaintiff respectfully requests that the Court enter judgment against Defendants for damages and costs to which he is entitled under Federal and State laws and such other relief as the Court deems just.

## X. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury.

*Signature*    Nwaubani

*Name*         Chidiebere Nwaubani

*Address*      252 Sanford Road

                   Westport, MA 02790

*Date*: October 12, 2010     *Telephone #*    508-536-5578